STATE OF NEBRASKA, APPELLEE, V.
RICHARD E. CEMPER, APPELLANT.

307 N.W.2d 820

Filed July 2, 1981. No. 43809.

Kirk E. Naylor, Jr., for appellant.

Paul L. Douglas, Attorney General, and Mark D. Starr for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, Retired District Judge.

McCOWN, J.

The defendant was found guilty of the unlawful manufacture of a controlled substance in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1979) and sentenced to imprisonment for a term of 3 years, fined $1,000, and given credit for jail time.

The defendant waived jury trial, and by stipulation of the parties the transcript from the preliminary hearing and the evidence and testimony introduced at the hearing on defendant's motion to suppress constituted the record at trial. The defendant objected to all the evidence based on the contention that the evidence was obtained in violation of the defendant's fourth amendment right to be free from unreasonable searches and seizures.

Sometime prior to August 28, 1979, Trooper Hayes of the Nebraska State Patrol had received information from a confidential informant whose information had previously been reliable that there was a cultivated marijuana patch near O'Neill, Nebraska. On August 28, 1979, the informant told Hayes that he had located the marijuana patch in an irrigated cornfield southeast of O'Neill, Nebraska. That night Hayes, accompanied by the informant, entered the cornfield involved here through an open gate adjacent to a county road. After penetrating the growing corn for approximately 175 yards they found what appeared to be a very large patch of growing marijuana in the middle of the cornfield. Hayes took a small sample of the plants and left.

The samples were later tested and found to be marijuana.

The cornfield is located on a quarter section of land on the west side of U.S. Highway 275 approximately 3½ miles southeast of O'Neill. The quarter section is owned by Cemper Land Company, a partnership consisting of several members of the family of the defendant. The portion of the property located nearest the highway is occupied and used primarily by Cemper Equipment Company, which is owned by Ron Cemper, a brother of the defendant. There are several buildings on the part of the property occupied by Cemper Equipment Company which are used daily for storage and repair of equipment.

Hilger Land Company was farming the cropland on a sharecrop basis for 1979 and performed the planting, cultivation, and subsequently the harvesting of the corn crop. Several Hilger brothers were involved in the operation but none of them were on the property during the times involved here.

The defendant was employed by Cemper Equipment Company as a welder. He testified that he had also been given responsibilities by Cemper Land Company in connection with the center pivot irrigation system and in applying fertilizer to the corn. The record does not indicate that the defendant had an ownership interest in Cemper Land Company, Cemper Equipment Company, or Hilger Land Company, or any personal possessory interest in the land except as an employee.

The cornfield is on the portion of the quarter section farthest away from Highway 275 and to the west of the property occupied and used by Cemper Equipment Company. A seldom-used country road is located on the west side of the quarter section, and there is a gate in the fence along that road which is used in connection with the farming operation. That gate was always left open and it is the gate through which Trooper Hayes and the informant went into the field. The entire field is enclosed by a barbed wire fence with two openings in

the fence on the east side of the property along Highway 275. At some time the property had been posted with no-trespassing signs but they had been shot off. No signs were posted at any of the times involved here.

The marijuana patch was located approximately in the center of the cornfield and approximately ⅛ of a mile west of the buildings of the Cemper Equipment Company. The growing marijuana was not visible from the borders of the property, from the buildings, nor from any location outside the cornfield due to the height of the growing corn. After August 28, 1979, Trooper Hayes made periodic observations of the property from the road and on September 18, 1979, again entered on the property with the informant and again observed the marijuana patch. On September 20, 1979, Hayes took a State Patrol investigator with him and showed him the marijuana patch. A full investigation followed, and on September 28, 29, and 30, and on October 2, the State Patrol conducted aerial surveillance of the property and took aerial photographs which are in evidence.

In the afternoon of October 3, 1979, an investigator of the State Patrol entered the property and hid in the corn near the marijuana patch. Thereafter three individuals, one of whom was the defendant, entered the marijuana patch and for approximately an hour picked and bundled the marijuana and the officer took photographs of the activity. When the three persons left the field they were arrested.

Jury trial was waived and the District Court found the defendant guilty as charged and sentenced him to imprisonment for a term of 3 years, fined him $1,000, and gave credit for jail time.

The sole issue on this appeal is whether Trooper Hayes' entry into the cornfield on August 28, 1979, constituted an unreasonable search within the meaning of the fourth amendment. The defendant asserts that he had a legitimate expectation of privacy in the invaded place and that the search was therefore illegal. The

State contends that under the "open fields doctrine" of *Hester v. United States*, 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 898 (1924), the specific protection accorded by the fourth amendment to the people in their "persons, houses, papers, and effects" is not extended to the open fields and that the search here was not illegal.

The defendant asserts that the open fields doctrine focusing on property rights in an invaded place has no further validity since *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); and *Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). Those cases reflect the holdings of the Supreme Court of the United States that the capacity to claim the protection of the fourth amendment as to unreasonable searches and seizures depends not upon a property right in the invaded place but upon whether the person who claims the protection of the amendment has a legitimate expectation of privacy in the invaded place. This court has already followed that mandate in at least two cases. See, *State v. Vicars*, 207 Neb. 325, 299 N.W.2d 421 (1980); *State v. Ohler*, 208 Neb. 742, 305 N.W.2d 637 (1981).

In the case now before us the critical question is, therefore, whether the defendant had a legitimate expectation of privacy in the marijuana patch in the middle of a cornfield under the circumstances disclosed by this record.

Following the decision in *Katz v. United States, supra*, some courts took the position that the *Katz* case had sounded the death knell of the open fields doctrine and had overruled *Hester* sub silentio. Other courts took the position that a straightforward application of *Hester* and the open fields doctrine was still proper. Nebraska adopted this position. See *State v. Poulson*, 194 Neb. 601, 234 N.W.2d 214 (1975). Still other courts took the view that as a per se exception to the fourth amendment the open fields doctrine had been substantially undermined by the doctrine that the fourth amendment pro-

tects people, not places. The open fields doctrine of *Hester* is viewed as merely an application of the principle that the fourth amendment protections do not apply where no reasonable expectation of privacy exists. Commentators on the subject have concluded that whichever of the approaches a particular court takes will seldom make any difference in terms of outcome. See, Lafave, Search and Seizure, A Treatise on the Fourth Amendment, § 2.4 at 334-35 (1978); Ringel, Searches and Seizures, Arrests and Convictions, § 8.4 (1980).

The original underpinnings of the open fields doctrine reflected the conclusion that it was unreasonable to conclude that objects placed in an open field would be safe from the prying eyes or hands of trespassers or other persons who might be present on the property. The open fields doctrine did not rest on ownership or possessory rights, but under the former emphasis on "place" there were still issues of standing which generally required rights of ownership or possession in the "place" in order to challenge a search. Although the focus on both of those issues of "place" and "standing" has now shifted to the person asserting the protection of the amendment, the use of property concepts in determining the presence or absence of the privacy interests protected by the fourth amendment has not been abandoned. See *Rakas v. Illinois, supra.*

In the case at bar the defendant asserts that he had a legitimate reasonable expectation of privacy in the middle of a cornfield which was owned by one company, of which he was an employee, and farmed by another company, with which he had no connection, in a rural area and on land on which no one resided. The field was enclosed by an ordinary barbed wire fence and the property was not posted against trespassers. At least one gate was always open. Although the marijuana was not visible from the borders of the property, it was clearly visible by aerial surveillance.

In the rural areas of this state it would be difficult to

find a landowner who would believe that no person would enter on his open field without permission. Hunters, fishermen, and other technical trespassers are so commonly expected in the rural areas of this state that a failure to post trespassing signs is regarded by many persons as almost an implied permission to enter. It is incomprehensible that an employee, who has no personal ownership or possessory interest in an open field, should have any legitimate expectation of privacy.

The fourth amendment protects persons but it does not protect them in every circumstance and in every place, public or private. Ownership and possessory rights in "places" are still important in determining whether or not a particular person has a legitimate expectation of privacy in a particular place. The open fields doctrine is not completely dead. Its reincarnated substance is still a vital part of the broader constitutional concept of freedom from unreasonable searches and seizures.

We hold that under the circumstances here the defendant had no legitimate expectation of privacy in an open field in which he had no personal ownership or possessory rights and therefore cannot claim the protection of the fourth amendment as to unreasonable searches and seizures.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.

KRIVOSHA, C.J., BOSLAUGH, BRODKEY, WHITE, and HASTINGS, JJ., concur in result.