STATE OF NEBRASKA, APPELLEE, V. MICHAEL F. HARMS,
APPELLANT.
449 N.W.2d 1

Filed December 1, 1989.   No. 88-978.

Kirk E. Naylor, Jr., for appellant.

Robert M. Spire, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

After a bench trial to the Pawnee County District Court, Michael F. Harms was found guilty of unlawful manufacture or

distribution of a controlled substance and possession of marijuana weighing more than 1 pound. He appeals to this court. For the reasons set forth below, we reverse and remand for a new trial.

On October 23, 1987, Harms was driving a pickup in Pawnee County, Nebraska. This pickup was owned by Dennis Jurgens, who was a passenger in the pickup. The pickup approached and stopped at a check stop "selective" conducted by the Nebraska State Patrol at the junction of Highways 4 and 99. After State Patrol officers observed marijuana in the pickup, both Jurgens and Harms were arrested. Subsequent searches of the vehicle and of real property owned by Jurgens uncovered large quantities of marijuana. Informations were later filed against both defendants. For a complete discussion of the check stop selective and the searches, see State v. One 1987 Toyota Pickup, ante p. 670, 447 N.W.2d 243 (1989).

On April 12, 1988, Harms filed a motion to suppress any evidence discovered as a result of the stop of the pickup. On April 20, a hearing on this motion was held. Considerable evidence was elicited concerning the State Patrol's method of establishing and conducting the check stop selective. The motion to suppress was overruled.

On September 8, Harms filed a motion to suppress as evidence a notebook recovered from a portable shed on the Jurgens property. The evidence at trial showed that on April 21, 1988, Gordon McDevitt, a deputy U.S. marshall, went to the Jurgens farm to serve a "warrant for arrest in rem." While on the Jurgens property McDevitt, by using the services of a locksmith, gained access to a locked portable toolshed. Once inside the shed, McDevitt discovered a spiral-bound notebook hidden in a portable cooler. He gave the notebook to Pawnee County Sheriff John Schulze. This motion to suppress was also overruled.

After a trial to the court on September 19, Harms was found guilty on both counts. We note that Harms made timely objections to the admission of the evidence at trial.

Harms appeals from these convictions. His sole assignment of error is that the trial court erred in overruling his motions to suppress.

This court has stated that in determining the correctness of a ruling on a motion to suppress, the Supreme Court will uphold a trial court's findings of fact unless those findings are clearly wrong. *State v. One 1987 Toyota Pickup, supra; State v. Marcotte, ante* p. 533, 446 N.W.2d 228 (1989). Our review of the record in this case does not disclose whether the trial court made factual findings. In any event, it is not necessary for this court to examine those findings, if any, because it is evident that the trial court erroneously applied the law in overruling the motions to suppress.

With regard to the April 12 motion to suppress, we must initially determine whether Harms has standing to assert a fourth amendment challenge to the stop at the check stop selective. Both Harms and the State focus on whether Harms, as driver but not owner of the vehicle, has standing to challenge the search of the vehicle. Such inquiry is misplaced. The proper inquiry is whether Harms, as an individual present in the vehicle, has standing to challenge the initial stop of the vehicle.

Other jurisdictions have considered this issue and have reached the conclusion that an occupant in a vehicle will usually have standing to challenge the stop of the vehicle. In *State v. Eis*, 348 N.W.2d 224 (Iowa 1984), the codefendants, who were the driver and the passenger of a vehicle which was stopped by a deputy sheriff, moved to suppress evidence obtained as a result of that stop. The trial court sustained the motion to suppress, and the prosecution sought review in the Iowa Supreme Court.

An issue before the court was whether defendant Dells, as a passenger in the vehicle, had standing to assert a fourth amendment challenge to the stop of the vehicle, which was owned and operated by defendant Eis. Standing would turn on whether Dells had a legitimate expectation of privacy that was invaded when the deputy sheriff stopped the truck in which he was riding. The court stated:

> The Supreme Court decision in *Rakas* [*v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)] does not answer the [standing] question because that case involved a challenge to the searching rather than the stopping of a vehicle. The legality of the stop was not an issue. . . . General principles governing the rights of vehicle

occupants to challenge stops were discussed in the Court's later decision in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). This court reviewed and applied the *Prouse* principles in *State v. Hilleshiem*, 291 N.W.2d 314, 316-19 (Iowa 1980).

As we noted in *Hilleshiem*, one of the principles recognized in *Prouse* is that the stopping of a vehicle is a seizure of its occupants within the meaning of the fourth amendment. . . . The vehicle occupants have a protected privacy interest in freedom of movement that is invaded when the vehicle is stopped. . . . The Supreme Court made no distinction in *Prouse* between the rights of passengers and those of drivers. The accused in that case may have been a passenger. *See* 440 U.S. at 650 n. 1, 99 S.Ct. at 1394, n. 1, 59 L.Ed.2d at 665. The accused persons in *Hilleshiem* included both drivers and passengers.

*Eis* at 226.

The court went on to state:

No principled basis exists for distinguishing between the privacy rights of passengers and drivers in a moving vehicle. When the vehicle is stopped they are equally seized; their freedom of movement is equally affected. We therefore hold that the occupants of motor vehicles, whether drivers or passengers, ordinarily have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government. This holding presupposes the occupant's rightful presence in the vehicle. Otherwise the privacy expectation is not legitimate. *See Rakas*, 439 U.S. at 143 n. 12, 99 S.Ct. at 430, n. 12, 58 L.Ed.2d at 401.

*Eis* at 226.

The court noted that "[t]he State acknowledges that courts which have held to the contrary have done so without helpful analysis." *Id.* The court found that Dells had a legitimate expectation of privacy that was invaded by the stop, and thus Dells had the requisite standing to assert a fourth amendment violation. After determining that the vehicle stop was illegal, the court affirmed the trial court's order in sustaining the motion to suppress.

Other jurisdictions have also reached the same result as *Eis*.

In *State v. DeMasi*, 419 A.2d 285 (R.I. 1980), *vacated on other grounds* 452 U.S. 934, 101 S. Ct. 3072, 69 L. Ed. 2d 948 (1981), *cert. denied* 460 U.S. 1052, 103 S. Ct. 1500, 75 L. Ed. 2d 931 (1983), the court held that all occupants of the vehicle had standing to challenge the constitutionality of the stop because "all three shared a legitimate expectation that they would be free from unreasonable governmental intrusion occasioned by the stop, the request for identification, and the warrant check. To hold otherwise here would be to draw artificial, formalistic distinctions not grounded in logic." *DeMasi* at 294. The court went on to point out that not all passengers in a vehicle will automatically have a legitimate expectation of privacy so as to be able to challenge a stop. Such a determination, the court noted, would be made on a case-by-case basis as suggested in *Rakas*.

In *Parkhurst v. State*, 628 P.2d 1369 (Wyo. 1981), *cert. denied* 454 U.S. 899, 102 S. Ct. 402, 70 L. Ed. 2d 216, the court found that a defendant who was a passenger in a vehicle detained by police had standing to challenge the stop because, as a guest in his brother's vehicle, he "could reasonably expect that the car in which he was a guest would be free from state encroachment." *Parkhurst* at 1374.

In *People v. Kunath*, 99 Ill. App. 3d 201, 425 N.E.2d 486 (1981), the court held that the defendant, as an occupant of the vehicle stopped by police, could challenge the stop of the vehicle, since it entailed an infringement of his personal freedom. See, also, *State v. Haworth*, 106 Idaho 405, 679 P.2d 1123 (1984); *State v. Beja*, 451 So. 2d 882 (Fla. App. 1984); *State v. Losee*, 353 N.W.2d 876 (Iowa App. 1984); *State v. Epperson*, 237 Kan. 707, 703 P.2d 761 (1985); *State v. Scott*, 59 Or. App. 220, 650 P.2d 985 (1982), *appeal after remand* 68 Or. App. 386, 681 P.2d 1188 (1984).

We conclude that an occupant of a vehicle will ordinarily have a legitimate expectation to be free of unreasonable governmental intrusion so as to give the occupant standing to challenge the stop as violative of his fourth amendment rights.

In the present case, we hold that Harms, as an occupant of the pickup which was detained by the State Patrol, had a legitimate expectation to be free of unreasonable governmental

intrusion. He therefore has standing to assert a fourth amendment challenge to the stop of the vehicle.

Having determined that Harms has standing to challenge the stop of the vehicle, we must next determine whether the stop violated Harms' fourth amendment rights. In *State v. One 1987 Toyota Pickup, ante* p. 670, 447 N.W.2d 243 (1989), we determined that the October 23, 1987, check stop selective, conducted by the Nebraska State Patrol, violated Jurgens' fourth amendment rights because the troopers who conducted the check stop selective acted with unconstrained discretion. Jurgens was the registered owner of the pickup and was present with Harms in the vehicle when it was detained at the roadblock. For the reasons set forth in *State v. One 1987 Toyota Pickup*, we hold that Harms was unreasonably seized in violation of the fourth amendment to the U.S. Constitution. Any evidence obtained as a result of that stop is "fruit of the poisonous tree," *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), and is inadmissible. Therefore, the trial court erred in overruling the April 12 motion to suppress.

Harms also contends that it was error for the trial court to overrule the September 8, 1988, motion to suppress as evidence the notebook found in a shed on the Jurgens property. To resolve this contention, we must first determine whether Harms has standing to assert a fourth amendment challenge to the search of the shed. This court has often stated that the capacity to claim the protection of the fourth amendment as to unreasonable searches and seizures depends not upon a property right in the invaded place, but upon whether the person who claims the protection of the amendment has a legitimate expectation of privacy in the invaded place. See *State v. Hodge and Carpenter*, 225 Neb. 94, 402 N.W.2d 867 (1987); *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986); *State v. Searles*, 214 Neb. 849, 336 N.W.2d 571 (1983), *cert. denied* 466 U.S. 906, 104 S. Ct. 1684, 80 L. Ed. 2d 158 (1984); *State v. Cemper*, 209 Neb. 376, 307 N.W.2d 820 (1981); *State v. Vicars*, 207 Neb. 325, 299 N.W.2d 421 (1980). We also stated in *Cemper, supra*, that ownership is still a factor to be considered in determining whether a person has a legitimate expectation of

privacy: "Ownership and possessory rights in 'places' are still important in determining whether or not a particular person has a legitimate expectation of privacy in a particular place." *Cemper* at 382, 307 N.W.2d at 823. The critical question, therefore, is whether Harms had a legitimate expectation of privacy in the shed where the notebook was found.

The record discloses that the shed was small and portable, having been mounted on skids. It was never permanently affixed to any real property, but instead was moved to various properties where it remained temporarily. In March 1988, it was moved onto Jurgens' property, where it was located when it was searched. The shed was built in 1978 or 1979 by Jurgens and Harms, using scrap materials from construction jobs. Jurgens and Harms worked as partners in a construction business, and both of them stored tools and personal property in the shed. The shed was kept locked, and only Harms and Jurgens had keys to the lock. When Marshall McDevitt searched the shed, he had to use the services of a locksmith to open the lock and gain access to the shed. Moreover, Harms testified that the shed was owned by both himself and Jurgens.

Based on these facts, it is clear that Harms had a reasonable expectation of privacy in the shed. He therefore has standing to assert a fourth amendment challenge to the search of the shed.

We must next focus on whether the notebook was illegally obtained by the federal marshall. As a threshold question, we must consider whether this evidence, assuming it was illegally seized by federal law enforcement personnel, is admissible in a state court criminal prosecution. If evidence which is illegally obtained by federal officers can be used in state criminal prosecutions, then the question of whether the evidence was illegally seized becomes irrelevant.

In *Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed 652 (1914), the Supreme Court established the rule which excluded, in a federal criminal prosecution, evidence obtained by federal agents in violation of the defendant's fourth amendment rights. The Court in *Weeks* also held that the admission of evidence unlawfully seized by local officers acting on their own account was not error because "the Fourth Amendment is not directed to individual misconduct of such

officials. Its limitations reach the Federal Government and its agencies." *Weeks* at 398. On this basis, federal prosecutors were free to use as evidence in federal criminal prosecutions evidence unlawfully seized by state officers. The question soon arose, when prosecutors attempted to introduce into federal criminal proceedings evidence illegally obtained by state officers, whether federal agents had participated in the search and seizure to such an extent as to make the exclusionary rule of *Weeks* applicable. In *Byars v. United States*, 273 U.S. 28, 47 S. Ct. 248, 71 L. Ed. 520 (1927), the Court held that where federal officers participated in the search under color of their federal office, and the search was in effect a joint operation between federal and state officers, the effect is the same as if the federal agents had engaged in conduct solely on their own. In *Lustig v. United States*, 338 U.S. 74, 78-79, 69 S. Ct. 1372, 93 L. Ed. 1819 (1949), the Court stated what has come to be known as the "silver platter" doctrine: "The crux of that doctrine [*Byars*] is that a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter." Later, in *Elkins v. United States*, 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960), the Court abolished the "silver platter" doctrine, holding that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the fourth amendment is inadmissible over the defendant's timely objection in a federal criminal trial. One year later, in *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), the Court, in making the exclusionary rule applicable to states, held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." It would appear that *Mapp* would decide the question under consideration here; however, Justice Goldberg, in his concurring opinion in *Cleary v. Bolger*, 371 U.S. 392, 83 S. Ct. 385, 9 L. Ed. 2d 390 (1963), indicated further discussion of the issue has not been totally foreclosed:

> There is a strong interest, which many decisions of this Court reflect [citations omitted], in ensuring compliance

by federal officers with rules having the force of federal law, designed to safeguard the rights of citizens charged with criminal acts. Whether the Supremacy Clause of the Constitution compels state courts to enforce that interest by excluding evidence obtained by federal officers in violation of the Federal Criminal Rules, including reverse "silver platter" situations wherein illegally procured evidence has been handed over to state officers, will warrant serious consideration in an appropriate case. We need not and therefore do not decide that question here.

*Cleary* at 404.

The U.S. Court of Appeals for the Second Circuit, citing to *Elkins* and *Byars*, stated that "[e]vidence seized by federal officers in violation of the Fourth Amendment presumably may not be used in a state criminal prosecution, especially when state officers have participated in the unlawful search." *United States v. Fay*, 344 F.2d 625, 629 n.1 (2d Cir. 1965). Similarly, in *The People v. Wilson*, 24 Ill. 2d 425, 430, 182 N.E.2d 203, 205 (1962), the court held that "the State can not divorce itself from [the federal officers'] conduct when it undertakes a prosecution" in a case where all the evidence is secured by or under their direction.

In light of *Mapp* and *Elkins*, we see no logical reason why evidence which is unlawfully seized by federal law enforcement personnel should be admissible in state court criminal prosecutions. We therefore hold that evidence illegally obtained by federal law enforcement personnel cannot be used in Nebraska state courts, provided the lawfulness of the seizure is properly raised and adjudicated.

In the present case, the evidence shows that Marshall McDevitt, acting pursuant to a warrant for arrest in rem, removed a notebook from a shed on the Jurgens property, then handed that notebook over to the Pawnee County sheriff for use in a state court criminal proceeding. There was also some evidence to suggest that the county sheriff was involved in the search which uncovered the notebook. This notebook, unless it can be established that it was legally obtained, cannot be admitted into evidence in Harms' criminal trial.

With regard to a motion to suppress, the burden of going

forward is on the movant to establish a prima facie case of an unconstitutional search and seizure, and when such prima facie case has been established, the burden of going forward shifts to the State to establish that the search and seizure was constitutionally permissible. We stated in *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987), *cert. denied* 484 U.S. 863, 108 S. Ct. 180, 98 L. Ed. 2d 133, that the burden of proof depends on whether the search was conducted pursuant to a search warrant or without a search warrant:

> If police have acted pursuant to a search warrant, the defendant bears the burden of proof that the search or seizure is unreasonable; but if police acted without a search warrant, the State has the burden of proof that the search was conducted under circumstances substantiating the reasonableness of such search or seizure.

*Vrtiska* at 461, 406 N.W.2d at 120.

The evidence presented at trial shows that Marshall McDevitt went to the Jurgens farm to execute a "warrant for arrest in rem." The warrant for arrest in rem was captioned "United States of America . . . vs. The North Half of the Northwest Quarter of Section 29, Township 3, North, Range 12, East of the 6th P.M. in Pawnee County, Nebraska, with its Buildings and Appurtenances . . . ." The document commanded the U.S. marshall to "arrest, attach and return until further order of the court the said defendant property with its buildings and appurtenances," and then give proper notice to "all persons claiming the same or knowing or having anything to say why the same should not be condemned and forfeited pursuant to the prayer of said [forfeiture] Complaint . . . ." The document was issued by the U.S. district court clerk.

We conclude this warrant for arrest in rem was not a search warrant. Under federal law, a search warrant must be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought is located. Fed. R. Crim. P. 41(a). Under Nebraska law, a search warrant may issue after a judge or magistrate determines that probable cause exists to issue the warrant, and the basis upon which the probable cause determination was made must be contained in the search warrant. See Neb. Rev. Stat. § 29-814.04 (Reissue

1985). The evidence in this case shows that the warrant for arrest in rem was issued by a district court clerk, not by a magistrate or judge. Nor does the evidence show that the warrant was issued after a probable cause determination. Moreover, "in rem" is defined as "against or with respect to a thing (as a right, status, or title to property)." Webster's Third New International Dictionary, Unabridged 1167 (1981). A proceeding in rem is one which is taken directly against property or one which is brought to enforce a right in the property. This warrant concerns the rights the government has in certain real property owned by Jurgens. Based on these facts, we hold the document entitled "warrant for arrest in rem" is not a search warrant.

Because the federal marshall acted without a search warrant, the State has the burden of proving that the search of the shed was lawful. The sole evidence adduced at the suppression hearing concerned Harms' reasonable expectation of privacy in the shed. The State presented no evidence. The trial judge waited to rule on the motion to suppress until after Marshall McDevitt and Sheriff Schulze testified at trial. We note that it is clearly the intention of Neb. Rev. Stat. § 29-822 (Reissue 1985) that motions to suppress evidence are to be ruled on and finally determined before trial, unless the motion is within the exceptions contained in the statute. See *State v. Pope*, 192 Neb. 755, 224 N.W.2d 521 (1974). It is the preferable practice that the trial judge rule on motions to suppress before trial begins. In any event, even considering the testimony of Sheriff Schulze and Marshall McDevitt which was presented at trial, the State did not carry its burden of proving the lawfulness of the search. In sum, Marshall McDevitt testified that he went to the Jurgens farm to serve a warrant for arrest in rem and that he had no other warrants or instructions signed by a federal judge authorizing him to seize personal property on the real estate. He also testified that he was not sure if the warrant for arrest in rem authorized him to seize personal property located on the real property. Sheriff Schulze merely testified as to the notebook's chain of custody after McDevitt turned it over to him. The entire record contains absolutely no evidence to even suggest that a warrant for arrest in rem authorizes law enforcement

personnel to search and remove personal property from the real estate described in the warrant. The State did not even attempt to prove that the warrant for arrest in rem was lawfully issued by the clerk of the federal district court, nor does the record reflect under what authority, statutory or otherwise, the warrant was issued. In the face of this total absence of evidence, we can only conclude that the State did not meet its burden of proving the lawfulness of the search. Therefore, the trial court erred in overruling the September 8 motion to suppress.

We cannot say the error in overruling the motions to suppress was harmless beyond a reasonable doubt. The notebook could link Harms to the marijuana found on the farm. The error is properly characterized as trial error, which does not bar retrial after this reversal. See *State v. Chambers, ante* p. 235, 444 N.W.2d 667 (1989). Accordingly, Harms' convictions are reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.