STATE OF NEBRASKA, APPELLEE, v. DANA POULSON, APPELLANT.

234 N. W. 2d 214

Filed October 30, 1975. No. 39900.

Mitchell & Beatty and Larry R. Demerath, for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and KUNS, Retired District Judge.

WHITE, C. J.

In this case, the defendant was convicted of possession of marijuana with intent to manufacture, in violation of section 28-4,125, R. S. Supp., 1974. The defendant's two major contentions on appeal are that illegally gathered evidence was introduced at the trial, and that the trial judge improperly instructed the jury. We affirm the judgment of the District Court.

On June 30, 1974, an unidentified informer told Officer Dowling of the Nebraska State Patrol, that the defendant was growing marijuana in the backyard of his house, 2 miles south of Elm Creek, Nebraska. The defendant's house was in the final stages of construction, and he was living in an apartment in Elm Creek. Officer Dowling notified the sheriff's office in Buffalo County, Nebraska, and along with a deputy sheriff, proceeded to a county judge to secure an arrest warrant for the defendant. After being assured that the defendant needed to be arrested immediately for fear that he might destroy the marijuana, the judge issued an arrest warrant.

Since it was Sunday, Officer Dowling, an investigator with the Nebraska State Patrol, believed that the defendant was probably working at his new residence. After securing the arrest warrant, Officer Dowling and the deputy sheriff drove to the defendant's new residence to arrest him. They checked the front and back doors, found them locked, and came to the conclusion that the defendant was not there. Consequently, the defendant was not arrested, and the issue of a search incident to a lawful arrest is not before us. However, the officers, in coming to and leaving the house, in the customary mode indicated by the paths, the construction of the doors, and the location of the residence, observed a cultivated field which Officer Dowling recognized as marijuana, espe-

cially because of a coloration change present in the plant. The officers saw 10 neat rows of what Dowling recognized as marijuana. It was growing approximately 75 feet from the house and was being watered by a hose connected to the house. All this was in plain view from the outside of the house during the time that the officers were attempting to locate and contact the defendant owner in the customary manner. The officers observed no marijuana growing in the area other than the marijuana that was growing in the rows. The officers took photographs of the marijuana and then cut the marijuana plants, placing the marijuana in bags so that it could be retained as evidence. A total of 611 stems were cut from the rows.

The defendant argues that the District Court erred in failing to suppress as evidence the marijuana gathered from the defendant's field behind his house. The defendant contends that the Fourth Amendment prohibition of unreasonable searches and seizures was violated because the officers did not have a search warrant when they confiscated the growing marijuana. We do not agree.

The Fourth Amendment to the United States Constitution reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment applies to searches of a person or his house, papers, or effects. This does not encompass a field which is approximately 75 feet behind a house which the defendant had not finished constructing and had not yet moved into.

Hester v. United States, 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898 (1924), is directly in point. In Hester, revenue agents were watching the defendant's house because of suspected moonshining activities. When the defendant and another were alerted to the revenue agents'

presence, they ran from the house. In the course of their flight, they dropped jugs of moonshine whiskey in the defendant's yard. The agents seized the jugs and they were used as evidence in the defendant's trial. Even though the agents had no search warrants nor arrest warrants, the United States Supreme Court held that the evidence was admissible because the Fourth Amendment did not apply. Speaking for the court, Mr. Justice Holmes said: "It is obvious that, even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. * * * the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law."

Thus, the trial court was correct in admitting evidence of the marijuana which was cut and collected from the open field by the officers.

The defendant also contends that the trial court erred in failing to give the defendant's requested instruction to the jury concerning the definition of the word "manufacture." The defendant submitted the definition for "manufacture," which set forth the exact language of section 28-4,115 (15), R. S. Supp., 1974. The statute reads: "Manufacture shall mean the production, preparation, propagation, compounding, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis * * *." The instruction which the District Court read to the jury concerning the term "manufacture" was: " 'Manufacture' shall include the production of a controlled substance* * *. 'Production' shall include the manufacture, planting, cultivation, growing or harvesting of a controlled substance."

From the testimony given at the defendant's trial, it is clear that the defendant sought to prove that the

process by which marijuana is grown, harvested, dried, and divided does not come under the definition of "manufacture" because it does not involve extracts or chemical synthesis. The defendant apparently misconstrued the statute in that he interpreted the phrase "either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis" as modifying production, preparation, propagation, compounding, or processing. Such an interpretation is unreasonable when the phrase is read in light of the entire statute. Section 28-4,115 (22), R. S. Supp., 1974, provides that: "Production shall include the manufacture, planting, cultivation, growing, or harvesting of a controlled substance." When both subsections are read together, it is manifestly clear that the Legislature intended to classify those who grow a controlled substance as being manufacturers of such a controlled substance. Obviously, the statutory requirement of extraction or chemical synthesis applies only to the word "processing" and not to the word "production," or subsection (22), of section 28-4,115, R. S. Supp., 1974, would be meaningless. Marijuana is the principal (only) controlled substance grown in Nebraska, and when the Legislature made growing a controlled substance a crime, it obviously had marijuana in mind. The defendant's contention would remove the growing of marijuana from the prohibition of section 28-4,125 (1), R. S. Supp., 1974, an absurd construction.

We assume that the District Court decided not to read the entire text of section 28-4,115 (15), R. S. Supp., 1974, because it felt that it would confuse the jury. We agree. The defendant's counsel misinterpreted the statute and it is certainly reasonable to fear that the jury might also misinterpret it. The District Court simplified the language of the statute so as to prevent the jury from construing the statute as the defendant did. The District Court's instructions could not be prejudicial error when the instructions merely insured that the jury would give

the statute the interpretation which the Legislature intended.

The judgment and sentence of the District Court are correct and are affirmed.

AFFIRMED.