STATE OF NEBRASKA, APPELLEE, V. WINFRED SAMUELS,
APPELLANT.

289 N. W. 2d 183

Filed February 20, 1980.  No. 42708.

James M. Davis of Dolan, Dinsmore & Davis, for appellant.

Paul L. Douglas, Attorney General, and Lynne Rae Fritz, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Defendant was charged with the first degree murder of Ronald Cunningham, whose death occurred on October 16, 1978. Upon being tried to a jury, he was found guilty of the lesser-included charge of second degree murder and was sentenced to 13 years in the Nebraska Penal and Correctional Complex. The errors assigned by defendant on appeal included the refusal to give defendant's proposed instructions as to motive of defendant and character of the victim, the giving of an instruction on flight pursuant to an oral request of the State, a denial of defendant's motion for mistrial based on misconduct of the prosecution, and failure of the evidence to support a conviction as a matter of law. We affirm.

On the evening of October 16, 1978, at approximately 9 p.m., police officers James Cates, Calvin Dierks, and Kenneth Bovasso, among others, were called to the scene of a shooting at 33rd and Lake Streets, in Omaha, Nebraska. There they found the victim slumped over the wheel of a 1971 white Cadillac. James Greer, a firefighter with the rescue squad, was also there and climbed into the car to examine the victim whom he found to be dead. Greer observed a cocked automatic weapon which he

handed to the police. The weapon was on the front seat near the victim's right thigh, pointed toward the dash. The victim's right hand was resting on his right thigh a couple of inches from the gun. It was later determined that the weapon was a .22-caliber automatic pistol, which was loaded as well as cocked. A search of the scene outside the automobile revealed three .25-caliber automatic shell casings. The weapon which was admitted to be that used in the killing was later found to be a .25-caliber automatic pistol.

Two occupants of the white Cadillac at the time of the killing, Elease Vaughan and Carolyn Evans, testified that the victim was sitting at the wheel visiting with two passengers in the front seat when they heard the door window being knocked out and three shots on the driver's side. Elease heard someone outside the car say "I'm going to get you." She had seen no gun inside the car.

Three other witnesses, James Smith, Shirley Marion, and Sylvester Bedford, saw someone shoot into the white Cadillac from the driver's side and then run from the scene.

By means of appropriate scientific evidence, the State established the cause of death as two gunshot wounds and identified the slugs taken from the victim's body as having been fired by the weapon admitted to having been used in the shooting.

The defendant was arrested on October 17, 1978, and after having been given the appropriate Miranda warnings, denied both on that day and the following day that he had done the shooting or, for that matter, that he had been near the scene. However, later on the 18th he recanted his prior statements and gave a tape-recorded statement in which he admitted to having shot Cunningham, but stated that Cunningham pulled a gun on him first. Defendant then told the police where the weapon could be found and it was picked up.

Following presentation of the above evidence by the State and the court's overruling of a motion to dismiss, the defense then put on its case. This consisted of the testimony of several witnesses as to the reputation of the victim for being dangerous and violent and that of the defendant as being a gentle, law-abiding person and incapable of shooting another person. Defendant himself testified, in which he admitted the shooting. However, he said he had gone with a friend of his, Simon Tunstall, to talk to Cunningham who was thought to have been the person who robbed Simon a few days before. Simon had the gun, but defendant took it because he didn't want Simon, who was considered to be hotheaded, to get into trouble. Defendant said he had no intention of using the gun, but did say he placed the loaded and cocked pistol in his pocket. He then said he tapped on the window, saw the victim go in his coat and come up with a gun which he pointed at defendant, and the latter then just fired. He didn't know how many times he fired, but immediately afterwards he ran from the scene because he was afraid.

It was in this state of the record that defendant's motions to dismiss for failure of the evidence were made, both at the close of the State's case and at the conclusion of all the evidence. It is obvious that the evidence, if believed by the jury, was sufficient for it to find that defendant did "purposely and maliciously, but without deliberation and premeditation" kill Ronald Cunningham. § 28-402, R. R. S. 1943. By the same token, there was nothing in the record which required the court to determine as a matter of law that the killing was done in self-defense. "It is only where there is a total failure of competent proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty."

State v. Webb, 197 Neb. 662, 250 N. W. 2d 625 (1977). The trial court did not err in refusing to direct a verdict of not guilty.

Turning next to the question of the instruction, three general observations might be appropriate at this time. In the first place, for future guidance of the trial courts, the fact that Nebraska Jury Instructions (NJI) does not contain a specific instruction on a subject forms no basis for the refusal of the court to give an otherwise correct and appropriate tendered instruction. The rule which we adopted with reference to NJI merely states that if NJI contains an instruction applicable to the situation and the court determines that the jury should be instructed on the subject, the NJI instruction should be used. Nebraska Jury Instructions, p. IX. Secondly, it would seem logical to expect, and no citation of authority should be required, that if evidence is received for a specific, limited purpose such as impeaching prior inconsistent statements, evidence of prior felonies committed by a witness, good character of the defendant for being a peaceful man, and bad character of the victim in a self-defense case, a proper and appropriate instruction tendered by a party to explain the significance or limitation of the evidence should be given. Finally, a tendered instruction, otherwise appropriate, which either misstates the law or tends to confuse or mislead the jury should not be given by the trial court. State v. Poulson, 194 Neb. 601, 234 N. W. 2d 214 (1975); Egbert v. State, 113 Neb. 790, 205 N. W. 252 (1925).

Defendant's tendered instruction No. 21 reads as follows: "The question of the motive of the defendant to kill Ronald Cunningham has been raised during trial. While motive is not an essential element of the crime of *first degree murder,* evidence of lack of motive is always permissible as a *circumstance favorable to the accused.* Such evidence is to be considered by you with the other evidence bearing

upon the question of guilt or innocence and is to be given such weight as you believe it to be fairly entitled to. When so considered, *it may be sufficient to create a reasonable doubt*, when without it, none would exist." (Emphasis supplied.) The trial court refused to give the instruction, primarily for the stated reason that NJI does not include an instruction on motive. We have previously eliminated this reason as a ground for refusing to give a properly tendered instruction. It was never intended, or at least would be impractical to believe, that NJI could possibly contain the necessary instructions applicable in every situation. If no such standard instruction is available, the court must draft one appropriate to the existing conditions.

However, was it error in any event to refuse defendant's tender? In support of his position that it was, defendant cites the following language from Trobough v. State, 119 Neb. 128, 227 N. W. 443 (1929): "The importance of motive, therefore, suggests the necessity of proper instructions to the jury concerning the same, and while absence of all evidence of motive in a case may be conceded to be circumstances favorable to the defendant, still it is not the province of the court to instruct the jury of the weight or bearing to be given to any particular circumstance; yet this court is committed to the doctrine that the defendant is entitled to an instruction on the subject of motive, *at least to the extent that the absence of all evidence of motive is a circumstance* that should be considered by the jury in connection with all other facts and circumstances in determining the guilt or innocence of the accused." (Emphasis supplied.) It should be pointed out that the facts in that case disclosed that proof of the identity of defendant as the perpetrator of the crime rested on circumstantial evidence, whereas here the defendant specifically admitted his act, and additionally there was not an "absence of all evidence of motive."

Also, in Egbert v. State, 113 Neb. 790, 205 N. W. 252 (1925), the trial court refused an instruction to the effect that if the evidence failed to disclose a motive on the part of the defendant, this is a *circumstance in favor of his innocence.* We there said: "* * * that the instruction tendered is not a correct statement of the law. It is not the province of the court to instruct the jury what weight or bearing should be given to a particular circumstance. As applied to the present situation, the instruction should go no further than to inform the jury that such a circumstance should be considered by them in connection with all the other facts and circumstances in determining the guilt or innocence of the defendant." Defendant's proposed instruction contained the language relating to a "circumstance favorable to the accused," the substance of which was found to be offensive in Egbert v. State, *supra.* An instruction which does not correctly state the law or which is likely to confuse or mislead the jury should not be given. State v. Pelton, 197 Neb. 412, 249 N. W. 2d 484 (1977); State v. Poulson, 194 Neb. 601, 234 N. W. 2d 214 (1975).

In part, defendant's tendered instruction No. 22 provided that the testimony regarding the victim's general reputation for violence might be considered in connection with defendant's claim of self-defense to show: "* * * 1. the likelihood that the deceased was the aggressor; 2. the defendant's apprehension of the deceased was reasonable. When so considered, it may be sufficient to create a reasonable doubt, when without it, none would exist. Your conclusion is to be drawn from the whole of the evidence, and where, after giving due weight to the evidence of the bad character of the deceased, the proof still shows the accused to be guilty beyond a reasonable doubt, such evidence of the bad character of the deceased is unavailing." This court has held that the failure to give a requested instruction on the

good character of a defendant is reversible error. McDougal v. State, 105 Neb. 553, 181 N. W. 519 (1921). We have not passed on that precise instructional question relating to the bad character of a victim.

We have said that in a homicide case, after the defendant has first introduced evidence tending to show self-defense, evidence of the ferocity or violent disposition of the victim is admissible for the purpose of showing either the defendant was acting in terror and hence incapable of malice necessary to constitute first degree murder, or that defendant was in such extremity as to make out a case of self-defense. State v. Escamilla, 195 Neb. 558, 239 N. W. 2d 270 (1976); State v. Kimbrough, 173 Neb. 873, 115 N. W. 2d 422 (1962). As we have stated earlier in this opinion, if evidence is properly received for a special or limited purpose, a proper instruction containing a correct statement of the law explaining the application of such evidence when tendered to the court should be given.

In State v. Finn, 243 S. W. 2d 67 (S. Ct. Mo., 1951), the Missouri Supreme Court was presented the question of the failure of the trial court to give a requested instruction in a self-defense case that " 'If the jury believes from the evidence that the deceased was of rash, turbulent and violent disposition and that the defendant had knowledge of such disposition, then it is a circumstance for the consideration of the jury in considering the reasonable cause for defendant's apprehension of great personal injury to himself.' " There, such failure was held to be erroneous. However, defendant's instruction here did not limit consideration of the character evidence to show the likelihood that deceased was the aggressor or that defendant's apprehension was reasonable. The first portion did, but the proposed instruction went on to state that "Your conclusion is to be drawn from the whole of the evidence, and where,

after giving due weight to the evidence of bad character of the deceased, the proof still shows the accused to be guilty beyond a reasonable doubt, such evidence of the bad character of the deceased is unavailing." The problem with that sentence of the instruction is that it suggests the generalization that bad character of the victim may be a reason for finding the defendant not guilty of his murder. This is somewhat similar to suggesting to the jury that it can find the defendant guilty if the evidence of his character shows him to be a bad man. Of course, this would be prohibited by the evidentiary exclusionary rule embodied in section 27-404, R. R. S. 1943, which renders inadmissible as part of the prosecution's evidence in chief the bad character of the defendant.

However, perhaps more nearly apropos of the situation here, we said in Scott v. State, 113 Neb. 657, 204 N. W. 381 (1925): "Error is assigned upon the court's refusal to give request * * * No. 3, [of defendant] that the prosecuting witness was of a quarrelsome disposition did not affect the nature of the act of shooting him and should be considered only upon the question of self-defense. While these requests state correct propositions, they are largely argumentative, and we think no prejudicial error is shown by the refusal, in view of the fact that by instruction No. 5, given by the court, the law of self-defense was clearly stated, and the jury told that if they 'find from the evidence that at the time defendant shot Roy Diederich, the *circumstances surrounding the defendant were such as in sound reason would, and did, justify and induce in his mind an honest belief that he was in immediate danger of receiving from Roy Diederich great bodily harm,'* then his act was excusable." (Emphasis supplied.)

For Samuels, the court gave the appropriate portion of NJI 14.33, the self-defense or justification instruction, which contained substantially the lan-

guage found and approved in instruction No. 5 in Scott v. State, *supra*. A portion of that language is as follows: "The use of force by the defendant * * * is justified if the defendant reasonably believed that such force was immediately necessary for the purpose of protecting himself against the use of unlawful force by Ronald Cunningham * * *. If you find from the evidence * * * either the defendant was justified in his force, or there is a reasonable doubt raised in your minds as to the State sustaining its burden of proof that the defendant was not justified in the use of the force claimed by him as a defense, then it is your duty to find the defendant not guilty." As stated in State v. Bear Runner, 198 Neb. 368, 252 N. W. 2d 638 (1977): "The trial court may refuse to give a requested instruction where the substance of the request is covered in the instructions given."

Defendant complains that the trial court gave instruction No. 18 on "flight" in face of the fact that not only was there no such NJI instruction, the reason assigned by the trial court in not giving defendant's proposed instructions on motive and character of the victim, but specifically, NJI 14.64 recommends that no such instruction be given. What we said above concerning the absence of a specific instruction in NJI is equally applicable here. The full text of the instruction given is as follows: "The evidence discloses that the defendant departed the scene shortly after the shooting occurred. Departure alone does not constitute 'flight.' In order for departure to acquire the legal significance of flight, you must find from all of the circumstances present and unexplained which, in conjunction with the leaving, reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid apprehension or prosecution based on that guilt.

"If you find that the defendant's conduct in leaving the scene immediately or soon after the shooting

constitutes voluntary flight, you are then instructed that voluntary flight is a circumstance nevertheless which you may consider in connection with all the other evidence in the case to aid you in determining the question of guilt or innocence of the defendant."

An instruction similar in nature was given and approved in State v. Lincoln, 183 Neb. 770, 164 N. W. 2d 470 (1969), with the clause, "is a circumstance, not sufficient of itself to establish guilt," added. Defendant here attacks the elimination of that clause. We do not feel that this was an omission of sufficient proportions to be called prejudicial error. As to the propriety of giving such instruction, there was evidence in the record from which it could be concluded that the defendant ran because he was frightened, or ran to escape detection. This was for the jury to decide in accordance with the definitional portion of the first paragraph of the instruction. Additionally, defendant insists it was error for the court to give an instruction based on an oral request of the prosecution. This claim is utterly groundless. Section 25-1111, R. R. S. 1943, requires that the court's instructions to the jury to be valid must be in writing. As to requested instructions, they need be in writing only to enable a party to assign error because of a failure of the court to give them. Obviously, the court may incorporate into its written instructions actually read to the jury any information, written or oral and from whatever source, as long as it is correct and appropriate to the situation.

Finally, defendant claims misconduct on the part of the prosecution in asking one of the defendant's character witnesses if he was aware of the fact that defendant was arrested on July 27, 1978, by the Los Angeles police department for possession of a controlled substance. His contention is that the witness having testified to defendant's being a peace-loving man, cross-examination would have to be pertinent to that characteristic and must be phrased in terms

not "are you aware of the fact?" but "have you heard that?" In any event, the question was answered before the court could rule on the objection, no opportunity to rule was given the court, no motion to strike was interposed, and the witness answered that it wouldn't make any difference anyway. There was no prejudice to the defendant.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.