STEVENSON, J.
Appellant, Paul O’Neal, was tried by jury and convicted of operating a “chop shop” and five counts of possession of a motor vehicle with an altered or removed vehicle identification number. O’Neal challenges the trial court’s denial of his pretrial motion to suppress certain vehicles and vehicle parts that were uncovered during a warrantless search. We affirm.
THE FACTS
The facts may be briefly summarized. The Florida Highway Patrol obtained information that a stolen 1983 International truck was located in a gated lot at 5500 Pembroke Road in Hollywood, Florida. Once at that location, the troopers were able to look through the fence and identify the stolen truck. The troopers then made a warrant-less entry onto the property to seize the stolen vehicle. While on the property, the *1136 troopers discovered other stolen property, which was not observable from outside the fence. After obtaining this information, the troopers applied for a warrant and returned to seize this additional contraband.
The property in question was a fenced private lot. Appellant held a leasehold interest in the property; the owner of the premises described the property as consisting of three adjacent “twenty-five (25) foot lots.” The gate to the fence was closed but not locked. According to the testimony of one of the troopers, “the gate had a chain hanging from it and a lock hanging, but it was not locked.” There were vehicles and various vehicle parts located within the fence. A very small warehouse-type structure was situated in the middle of the lot all the way back against the rear fence. One of the troopers testified that the area in which the lot was located was mainly “residential.” In any event, no one lived on the premises and appellant engaged in no open commercial activity there.
Appellant filed a motion to suppress the vehicles and vehicle parts that were discovered on the premises. The trial court denied the motion. We affirm because we find this case controlled by the “open fields” exception to the Fourth Amendment.
THE OPEN FIELDS EXCEPTION
In Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924), the Court stated: “[T]he special protection accorded by the Fourth Amendment to the people in their ‘persons, houses, papers and effects,’ is not extended to the open fields. The distinction between the latter and the house is as old as the common law.” The open fields exception was followed in Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), to approve a warrantless search of a field where the officers went to a farm, driving past a house to a locked gate with a “no trespassing” sign but with a footpath around the gate. The officers proceeded on the footpath into the field where they found marijuana growing. In reaffirming the “open fields” doctrine of Hester, the Court found that “an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home.” Oliver, 466 U.S. at 178, 104 S.Ct. at 1741.[1] OPEN FIELDS AND PLANNED URBAN DEVELOPMENT
We acknowledge that there seems to be little similarity between the open farm lands considered in the 1924 case of Hester v. United States, 265 U.S. at 59, 44 S.Ct. at 446, and a small fenced lot in a well-populated urban area of present-day South Florida. Indeed, the examples throughout the Oliver opinion — such as references to lands used for “the cultivation of’crops,” the “vast expanse of some western ranches,” and the “undeveloped woods of the Northwest” — imply that the Court envisioned particularly rural or undeveloped land. 466 U.S. at 179,179 n. 10, 104 S.Ct. at 1741-42, 1742 n. 10. Nevertheless, the United States Supreme Court has declined to expressly restrict the doctrine to rural areas and has suggested that size and location of the property is unimportant. As the Court explains in Oliver:
It is clear ... that the term ‘open fields’ may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither “open” nor a “field” as those terms are used in common speech.
Id. at 180 n. 11, 104 S.Ct. at 1742 n. 11.
The fenced lot in the instant case, although located in a well-populated urban area, is neither a residence, nor the curtilage of one, nor is it legitimate business property. The maintenance of a fence around the property provides no safe harbor from warrantless governmental intrusion upon this “open field.” The Court in Oliver rejected a case-by-case analysis. Id. at 181, 104 S.Ct. at 1742-43.[2] Thus, it was irrelevant that the *1137 petitioner in Oliver “had done all that could be expected of him to assert his privacy” in the “open field.” Id. at 173, 104 S.Ct. at 1738. The Court “reject[ed] the suggestion that steps taken to protect privacy establish that expectations of privacy in an open field are legitimate.” Id. at 182, 104 S.Ct. at 1743. Instead, the Court made clear that
the correct inquiry is whether the government’s intrusion infringes upon the personal and societal values protected by the Fourth Amendment [i.e., the protection of persons, houses, papers and effects ]. As we have explained, we find no basis for concluding that a police inspection of open fields accomplishes such an infringement.
Id. at 182-83, 104 S.Ct. at 1743-44.
Accordingly, the judgment and sentence on appeal is AFFIRMED.
WARNER and PARIENTE, JJ., concur.

. While the rule centered around the protection of the home, the Court also noted that protection of offices and commercial buildings may also be afforded the legitimate expectation of privacy. Id. at 178 n. 8, 104 S.Ct. at 1741 n. 8.

. “Under this approach [case by case], police officers would have to guess before every search whether landowners had erected fences sufficiently high, posted a sufficient number of warning signs, or located contraband in an area sufficiently secluded to establish a right of privacy. *1137 The lawfulness of the search would turn on ‘[a] highly sophisticated set of.rules, qualified by all sorts of ifs, ands and buts requiring the drawing of subtle nuances and hairline distinctions _’ " (citations omitted). Id. at 181, 104 S.Ct. at 1743.