was entitled to absolute immunity for conduct within the scope of his role in the juvenile proceedings. It correctly dismissed the six employees in their individual capacities because the plaintiffs' claims against them were barred by the statute of limitations. The remaining 12 DHHS employees sued by the plaintiffs were not parties to this action. Therefore, there are no defendants remaining in the lawsuit that could be found liable to the plaintiffs. As such, we do not need to address the remaining assignments of error.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court that dismissed the plaintiffs' complaint.

Affirmed.

Cassel, J., not participating.

――――――――――

City of Beatrice, State of Nebraska, appellee,
v. Daniel A. Meints, appellant.
___ N.W.2d ___

Filed December 5, 2014.    Nos. S-12-1083 through S-12-1092.

1.  **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. An appellate court reviews the trial court's findings of historical facts for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court independently reviews.
2.  **Search and Seizure.** Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable.
3.  **Constitutional Law: Search Warrants: Property.** Probable cause, standing alone, is not an exception to the search warrant requirement of the Fourth Amendment as applied to real property.
4.  **Constitutional Law: Search and Seizure.** A "search" under the Fourth Amendment occurs if a legitimate expectation of privacy is infringed.
5.  ____: ____. A reasonable expectation of privacy is one with a source outside the Fourth Amendment, by reference either to concepts of real or personal property law or to understandings that society recognizes and permits.
6.  ____: ____. A "search" under the Fourth Amendment occurs if the government gains evidence by physically intruding on constitutionally protected areas.

7.   ____: ____. No "search" occurs under either the reasonable expectation of privacy test or the physical intrusion test if the area examined is an "open field."

8.   **Search and Seizure: Words and Phrases.** "Open fields" are those unenclosed areas beyond the curtilage of a home in which the defendant has no reasonable expectation of privacy.

9.   **Search and Seizure.** A person cannot have a reasonable expectation of privacy in unenclosed rural land.

10.  **Search and Seizure: Words and Phrases.** An unenclosed area within an incorporated community is an "open field" if it is not curtilage and the person complaining of the intrusion does not, under the facts of the case, have a reasonable expectation of privacy in the area.

Petitions for further review from the Court of Appeals, Moore, Pirtle, and Bishop, Judges, on appeal thereto from the District Court for Gage County, Daniel E. Bryan, Jr., Judge, on appeal thereto from the County Court for Gage County, Steven B. Timm, Judge. Judgments of Court of Appeals affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Gregory A. Butcher, Beatrice City Attorney, for appellee.

Jon Bruning, Attorney General, and James D. Smith for amicus curiae State of Nebraska.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

Daniel A. Meints owns an uninhabited, unfenced lot in the City of Beatrice, Nebraska (City), on which he kept an array of automobiles and motorcycles. In a bench trial, the county court convicted Meints of multiple violations of a municipal ordinance relating to unregistered motor vehicles. On appeal, the district court reversed Meints' convictions on 2 of the 12 counts and otherwise affirmed. The Nebraska Court of Appeals affirmed the district court's judgment,[1] and

---

[1] *City of Beatrice v. Meints*, 21 Neb. App. 805, 844 N.W.2d 85 (2014).

we granted Meints' petitions for further review. These appeals present the following question: Does probable cause, standing alone, justify a warrantless search of an individual's real property? We conclude that Fourth Amendment jurisprudence does not recognize a probable cause exception applicable to real property. But we also conclude that the City did not conduct a "search," because the property invaded was an "open field." Because no warrant was required, we affirm.

## BACKGROUND

The City prohibits the prolonged parking of unregistered motor vehicles on private property. Section 16-623(a) of the City's code[2] provides:

> It shall be unlawful for any person in charge or control of any private property within the city . . . to allow any motor vehicle which has been unregistered for more than twenty-one (21) days to remain upon any private property. Any motor vehicle allowed to remain on private property in violation of this subsection shall constitute a nuisance and shall be abated.

Section 16-623(b) states that persons who violate the ordinance are guilty of a misdemeanor and subject to fines, ranging from $100 to $500 each day the ordinance is violated.

In March 2011, a City code enforcement officer observed what he believed to be unregistered motor vehicles on Meints' property. The officer saw numerous motor vehicles and motorcycles without license plates or vehicles that were inoperable. The officer did not enter Meints' property. Instead, he took photographs while standing in a public street, an alley, or a neighbor's property.

On that same day, Joe McCormick, a Beatrice police officer, was dispatched to the scene. McCormick initially observed the vehicles from a public street. He did not see any fencing or closed buildings on the property. McCormick testified that he had probable cause to believe Meints was violating § 16-623 and that he entered the property without a warrant

---

[2] Beatrice Mun. Code, ch. 16, art. XVII, § 16-623(a) (2002).

to investigate. While on the property, McCormick took photographs and recorded vehicle identification numbers (VINs). He testified that he did not enter any structure, open any door, or "move anything."

McCormick returned to the property on May 23, 2011, and saw that the vehicles remained. Since McCormick's first visit, Meints had attached a "no trespassing" sign to a tree. Additionally, Meints was present and told McCormick to stay off the property. But McCormick did not heed the request and entered the property without a warrant to take additional photographs and record VINs. McCormick cited Meints for violating § 16-623 and returned numerous times to issue additional citations.

The City charged Meints in county court with 12 counts of violating § 16-623. The 12 counts related to seven motorcycles and five automobiles. Meints moved to suppress the evidence and observations resulting from McCormick's warrantless entry onto the property. The court denied the motion, reasoning that the property was not entitled to Fourth Amendment protection because it was an "open field."

The county court found Meints guilty of all charges. Meints appealed to the district court, which reversed his convictions on two counts because of insufficient evidence but otherwise affirmed.

Meints assigned to the Court of Appeals that the county court erred by overruling his motion to suppress. Meints argued that the open fields doctrine did not apply to urban property. The court affirmed on a different ground: the probable cause exception to the warrant requirement.

The Court of Appeals assumed that McCormick had searched Meints' real property and noted that a warrantless search is per se unreasonable under the Fourth Amendment. But the court stated that among "the warrantless search exceptions recognized by the Nebraska Supreme Court" is an exception for "searches undertaken with consent *or with probable cause*."[3]

---

[3] *City of Beatrice v. Meints, supra* note 1, 21 Neb. App. at 812, 844 N.W.2d at 92 (emphasis supplied), citing *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011).

Relying on this language, the court held that the observations McCormick made while on a public street gave him probable cause to believe the vehicles were evidence of a crime and allowed him to enter Meints' property without a warrant to gather evidence.

## ASSIGNMENT OF ERROR

Meints assigns that the Court of Appeals erred by relying on "a mistaken statement of the law — with regard to 'probable cause', alone, being a recognized exception to the warrant requirement of the Fourth Amendment to the United States Constitution."

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[4] We review the trial court's findings of historical facts for clear error.[5] But whether those facts trigger or violate Fourth Amendment protections is a question of law that we independently review.[6]

## ANALYSIS

### PROBABLE CAUSE EXCEPTION

Meints argues that probable cause—standing alone—is not an exception to the search warrant requirement. The City succinctly responds that "the jurisprudence of the State of Nebraska for over a decade has noted that probable cause is a distinct and separate exception to a warrantless search."[7] While both statements are correct, we have been less than precise in our language and must clarify the latter.

---

[4] See *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014).

[5] *Id.*

[6] *Id.*

[7] Brief for appellee in response to petition for further review at 3.

We begin with the constitutional text. The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The amendment's language naturally divides into two parts: (1) a prescription that searches and seizures be reasonable and (2) the conditions on which a warrant may issue.[8] The relationship between these two parts is not apparent from the text, which has "'both the virtue of brevity and the vice of ambiguity.'"[9] For example, whether a search is "unreasonable" without a warrant is a question to which a "literal reading of the language of the Fourth Amendment contributes little."[10]

[2] The U.S. Supreme Court has resolved some of this ambiguity. It is now well established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable."[11] And the Court has consistently referred to a "warrant requirement" for more than four decades.[12] If law enforcement conducts a search

---

[8] See, *Kentucky v. King*, ___ U.S. ___, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011); 2 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 3.1(a) (5th ed. 2012).

[9] 2 LaFave, *supra* note 8, § 3.1(a) at 4, quoting Jacob W. Landynski, Search and Seizure and the Supreme Court 42-43 (1966).

[10] *Id*.

[11] *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). See, also, *Thompson v. Louisiana*, 469 U.S. 17, 105 S. Ct. 409, 83 L. Ed. 2d 246 (1984).

[12] E.g., *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014); *Camara v. Municipal Court*, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967).

without a warrant, it is reasonable only if it falls within a band of exceptions the Court has described as "specific,"[13] "'well-delineated,'"[14] "carefully delineated,"[15] "specifically established,"[16] and "narrow."[17]

The City is correct that we have "noted" that probable cause justifies a warrantless search for more than a decade. We have often prefaced our analysis of warrantless searches with a list of exceptions that includes "searches undertaken with . . . probable cause."[18] But our application of this "exception" has been less than clear.

For example, we held in *State v. Voichahoske*[19] that a warrantless strip search during intake was reasonable because the officers had probable cause to believe the defendant possessed contraband. There, the defendant was a passenger in an automobile stopped by police. After a police dog indicated that narcotics were in the vehicle, the defendant was arrested and taken to a sheriff's office. There, police strip searched the defendant and found contraband in and on his person. The defendant moved to suppress evidence stemming from the strip search "because his continued detention, arrest, and search were illegal."[20] Stating that the "warrantless search

---

[13] See *Riley v. California, supra* note 12, 134 S. Ct. at 2482.

[14] See *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

[15] See *United States v. United States District Court*, 407 U.S. 297, 318, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972).

[16] See *Arizona v. Gant, supra* note 11, 556 U.S. at 338.

[17] See *Flippo v. West Virginia*, 528 U.S. 11, 13, 120 S. Ct. 7, 145 L. Ed. 2d 16 (1999). See, also, *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014).

[18] See *State v. Borst, supra* note 3, 281 Neb. at 221, 795 N.W.2d at 267. Accord, *State v. Gorup*, 279 Neb. 841, 782 N.W.2d 16 (2010); *State v. Gorup*, 275 Neb. 280, 745 N.W.2d 912 (2008); *State v. Eberly*, 271 Neb. 893, 716 N.W.2d 671 (2006); *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006); *State v. Roberts*, 261 Neb. 403, 623 N.W.2d 298 (2001). See, also, *J.P. v. Millard Public Schools*, 285 Neb. 890, 830 N.W.2d 453 (2013); *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010).

[19] *State v. Voichahoske, supra* note 18.

[20] *Id*. at 70, 709 N.W.2d at 668.

exceptions" included "searches undertaken . . . with prob-
able cause,"[21] we held that the strip search was reasonable
because the police "had probable cause to believe that drugs
would be found on [the defendant]."[22] But it is not clear
whether we reasoned that probable cause justified a war-
rantless search, or that probable cause justified a warrantless
arrest and the narcotics were found in a subsequent search
incident to arrest, or that probable cause justified a warrant-
less arrest and security concerns justified a warrantless strip
search during intake.[23]

We considered the relationship between probable cause
and the need for a warrant again in *State v. Smith*.[24] There, an
officer reached into the pocket of a person not under arrest
and pulled out small bags containing narcotics. We stated that
"searches justified by probable cause" are one of the "war-
rantless search exceptions recognized by this court."[25] We
considered the exception's application, but concluded that the
officer did not have probable cause to believe that the defend-
ant had narcotics on his person.

So, we have been less than precise. And our statement that
probable cause, standing alone, justifies a warrantless search
is out of step with the overwhelming weight of authority.[26]
In *Katz v. United States*,[27] the U.S. Supreme Court explained

---

[21] *Id*. at 74, 709 N.W.2d at 670.

[22] *Id*. at 77, 709 N.W.2d at 671.

[23] See, 3 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth
Amendment § 5.3(a) and (c) (5th ed. 2012). See, also, *Florence v. Board
of Chosen Freeholders*, ___ U.S. ___, 132 S. Ct. 1510, 182 L. Ed. 2d 566
(2012).

[24] *State v. Smith, supra* note 18.

[25] *Id*. at 927, 782 N.W.2d at 923.

[26] See, *Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068
(2004); *Chapman v. United States*, 365 U.S. 610, 81 S. Ct. 776, 5 L. Ed.
2d 828 (1961); *Jones v. United States*, 357 U.S. 493, 78 S. Ct. 1253, 2 L.
Ed. 2d 1514 (1958); *Agnello v. United States*, 269 U.S. 20, 46 S. Ct. 4, 70
L. Ed 145 (1925).

[27] *Katz v. United States*, 389 U.S. 347, 356-57, 88 S. Ct. 507, 19 L. Ed. 2d
576 (1967), quoting *Agnello v. United States, supra* note 26.

that probable cause is not a panacea for invasions of privacy by law enforcement:

> In the absence of [judicial] safeguards, this Court has never sustained a search upon the sole ground that officers reasonably expected to find evidence of a particular crime and voluntarily confined their activities to the least intrusive means consistent with that end. Searches conducted without warrants have been held unlawful "notwithstanding facts unquestionably showing probable cause[.]"

Fourth Amendment jurisprudence has not strayed from this understanding. Put simply, "[a]n officer's correct belief in the existence of probable cause does not obviate the warrant requirement."[28]

If probable cause alone justified a warrantless search of real property, it would suffocate the Fourth Amendment. "A warrantless search cannot be justified by probable cause, because that is the very determination for which the constitution requires a warrant hearing."[29] By ensuring an objective determination of probable cause, rather than one "'by the officer engaged in the often competitive enterprise of ferreting out crime,'"[30] the warrant requirement ensures that intrusions on privacy are not made by "random or arbitrary acts of government agents."[31] Reviewing a search after it has occurred is a poor substitute for a prior judicial determination:

> [A]llowing an after-the-fact analysis of the facts and circumstances to determine whether there was probable cause supporting a warrantless search or seizure "bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less

---

[28] *U.S. v. Carpenter*, 360 F.3d 591, 598 (6th Cir. 2004) (Gilman, Circuit Judge, concurring).

[29] *Stackhouse v. State*, 298 Md. 203, 219, 468 A.2d 333, 342 (1983).

[30] *Riley v. California*, *supra* note 12, 134 S. Ct. at 2482, quoting *Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 2d 436 (1948).

[31] *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 622, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989).

reliable procedure of an after-the-event justification for the search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment."[32] And efficiency alone is not enough to disregard the warrant requirement.[33] Obviously, the investigation of crime would always be simpler if police did not need a warrant.[34]

[3] So, we hold that probable cause, standing alone, is not an exception to the search warrant requirement of the Fourth Amendment as applied to real property. Probable cause is, of course, relevant to the reasonableness of a search under the Fourth Amendment. For example, probable cause justifies a warrantless arrest[35] and probable cause—in conjunction with other circumstances—may justify a warrantless search under the "plain view" and "plain feel" doctrines.[36] Additionally, police do not need a warrant to search an automobile if there is probable cause to believe that it contains contraband.[37] Notably, we first listed "probable cause" as one of the "recognized exceptions to the Fourth Amendment's warrant requirement *as applied to automobiles*,"[38] and occasionally, courts simply refer to a "probable cause exception" in cases involving automobiles.[39] Here, though, the Court of Appeals applied a probable cause exception to real property.

The Court of Appeals assumed that a warrantless search of Meints' real property occurred but held that the search was reasonable under the probable cause exception to the warrant requirement. As explained, probable cause does not justify a warrantless search of real property. If the City

---

[32] *U.S. v. Martinez*, 686 F. Supp. 2d 1161, 1180 (D.N.M. 2009), quoting *Katz v. United States, supra* note 27.

[33] *Mincey v. Arizona*, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).

[34] *Id*.

[35] See, e.g., *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014).

[36] See *State v. Smith, supra* note 18.

[37] See, e.g., *State v. Dalland*, 287 Neb. 231, 842 N.W.2d 92 (2014).

[38] See *State v. Konfrst*, 251 Neb. 214, 224, 556 N.W.2d 250, 259 (1996) (emphasis supplied).

[39] E.g., *U.S. v. Snook*, 88 F.3d 605, 608 (8th Cir. 1996).

conducted a search, it does not pass constitutional muster unless the City can identify an applicable exception to the warrant requirement.

## Open Fields Doctrine

[4,5] But we need not consider the exceptions to the warrant requirement if there was no search. Under the test outlined in Justice Harlan's concurrence in *Katz v. United States*,[40] a "search" under the Fourth Amendment occurs if a legitimate expectation of privacy is infringed.[41] Two inquiries are involved. First, an individual must have exhibited an actual (subjective) expectation of privacy.[42] Second, the expectation must be one that society is prepared to recognize as reasonable.[43] A reasonable expectation of privacy is one with a source outside the Fourth Amendment, by reference either to concepts of real or personal property law or to understandings that society recognizes and permits.[44]

[6] Recently, however, the U.S. Supreme Court has said that Fourth Amendment rights "do not rise or fall with the *Katz* formulation."[45] A "search" also occurs if "the government gains evidence by physically intruding on constitutionally protected areas."[46] When government activity crosses this "simple baseline,"[47] it is unnecessary to ask whether the government infringed the defendant's legitimate expectation of privacy because "the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test."[48] So, a "search" occurs if

---

[40] See, *Katz v. United States, supra* note 27 (Harlan, J., concurring); *U.S. v. Jones*, ___ U.S. ___, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012).

[41] See, e.g., *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011).

[42] *Id*.

[43] *Id*.

[44] See *State v. Knutson, supra* note 4.

[45] *U.S. v. Jones, supra* note 40, 132 S. Ct. at 950.

[46] *Florida v. Jardines*, ___ U.S. ___, 133 S. Ct. 1409, 1417, 185 L. Ed. 2d 495 (2013).

[47] *Id*., 133 S. Ct. at 1414.

[48] *U.S. v. Jones, supra* note 40, 132 S. Ct. at 952 (emphasis in original).

either (1) the defendant's legitimate expectation of privacy is infringed or (2) the government physically intrudes on a protected area.[49]

[7] But no "search" occurs under either the reasonable expectation of privacy test[50] or the physical intrusion test[51] if the area examined is an "open field." The U.S. Supreme Court first applied the "open fields doctrine"[52] in the 1924 case *Hester v. United States*.[53] There, the defendant tossed a container of "moonshine" whiskey while being chased by revenue agents across a field. Citing only the commentator Sir William Blackstone as authority, the Court announced "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields."[54]

After the reasonable expectation of privacy test flowered in the furrow left by *Katz*, some courts questioned whether the open fields doctrine was compatible with the new understanding of Fourth Amendment rights.[55] In *Oliver v. United States*,[56] the court answered in the affirmative. *Oliver* involved two different marijuana patches, one on a farm and another "in the woods."[57] In light of *Katz*, the Court explained that the open fields doctrine "may be understood as providing that an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area

---

[49] See *id*.

[50] See *Oliver v. United States*, 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984). See, also, *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986).

[51] See *U.S. v. Jones, supra* note 40.

[52] See *State v. Havlat, supra* note 50, 222 Neb. at 558, 385 N.W.2d at 439.

[53] *Hester v. United States*, 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 2d 898 (1924).

[54] *Id*., 265 U.S. at 59, citing 4 William Blackstone, Commentaries *223, *225-26.

[55] 1 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 2.4(a) (5th ed. 2012).

[56] *Oliver v. United States, supra* note 50.

[57] *Id*., 466 U.S. at 174.

immediately surrounding the home."[58] The Court reasoned that cropland and other rural areas are not conducive to reasonable privacy expectations:

> [O]pen fields do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. It is not generally true that fences or "No Trespassing" signs effectively bar the public from viewing open fields in rural areas.[59]

In response to the dissent's argument that private activity in rural areas was not uncommon, the majority replied that "[o]ne need only think only of the vast expanse of some western ranches or the undeveloped woods of the Northwest to see the unreality of the dissent's conception."[60] That the defendants attempted to conceal their criminal activities was irrelevant. The Court "reject[ed] the suggestion that steps taken to protect privacy"—such as the erection of fences or "'No Trespassing'" signs—"establish that expectations of privacy in an open field are legitimate."[61] Furthermore, that the officers physically trespassed on the land did not turn their information gathering into a "search."

[8] The open fields doctrine is best understood as a facet of the reasonable expectation of privacy test. That is, "open fields" are those unenclosed areas beyond the curtilage of a home in which the defendant has no reasonable expectation of privacy. *Oliver* stated that the doctrine is also "founded upon the explicit language of the Fourth Amendment,"[62] in

---

[58] *Id.*, 466 U.S. at 178.

[59] *Id.*, 466 U.S. at 179.

[60] *Id.*, 466 U.S. at 179 n.10.

[61] *Id.*, 466 U.S. at 182.

[62] *Id.*, 466 U.S. at 176.

the sense that the text does not literally include "open fields." The four items listed in the Amendment are central to its understanding,[63] but the Fourth Amendment is not limited to literal "persons, houses, papers, and effects." The Court has extended Fourth Amendment protection to areas as diverse as bathroom stalls,[64] office buildings,[65] and, famously, a telephone booth.[66] Nor is the concern in *Oliver* for the difficulties of ad hoc factual determinations the basis of the open fields doctrine. Efficiency alone is not enough to dispense with Fourth Amendment protections.[67] Instead, as we have explained, the open fields doctrine, and its attendant concept of curtilage, are "merely applications" of the rule that a search occurs when a reasonable expectation of privacy is invaded.[68] Nor was the reasonable expectation of privacy test jettisoned by the U.S. Supreme Court's renewed focus on trespass. Information gathering in "'open fields'" remains "subject to *Katz*."[69]

The statement in *Oliver* that efforts to protect privacy in an open field cannot make a privacy expectation legitimate must be understood in the context of the land involved. In both *Hester* and *Oliver*, the Court was considering rural areas. The facts in *Hester* are sparse, but it appears that when the Court referred to the land as "open fields," it literally meant an open field. At the time, the phrase "open fields" was not yet a term of art. Similarly, *Oliver* involved farmland and a densely wooded area.[70] The references in *Oliver* to "the cultivation of crops,"[71] "the vast expanse of some western ranches," "the

---

[63] See *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

[64] See 1 LaFave, *supra* note 55, § 2.4(c).

[65] See *id*., § 2.4(b).

[66] See *Katz v. United States, supra* note 27.

[67] See *Mincey v. Arizona, supra* note 33.

[68] *State v. Ramaekers*, 257 Neb. 391, 395, 597 N.W.2d 608, 612 (1999).

[69] *Florida v. Jardines, supra* note 46, 133 S. Ct. at 1414.

[70] See, *Oliver v. United States, supra* note 50. See, also, *United States v. Dunn*, 480 U.S. 294, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987).

[71] *Oliver v. United States, supra* note 50, 466 U.S. at 179.

undeveloped woods of the Northwest,"[72] "secluded land,"[73] and "the many millions of acres that are 'open fields'"[74] show that the Court "envisioned particularly rural or undeveloped land."[75] Likewise, the cases in which we have applied the open fields doctrine involved marijuana patches in cornfields or other pastoral settings.[76]

[9] Read in its context, *Oliver* categorically determined that a person cannot have a reasonable expectation of privacy in the "many millions of acres" of unenclosed rural land. As we have recognized, barbed wire fences and "no trespassing" signs are not, as a practical matter, a barrier to country trespassers:

> "In the rural areas of this state it would be difficult to find a landowner who would believe that no person would enter on his open field without permission. Hunters, fishermen, and other technical trespassers are so commonly expected in the rural areas of this state that a failure to post trespassing signs is regarded by many persons as almost an implied permission to enter."[77]

Apart from the impracticality of efforts to keep intruders out, the relative vastness of farms, ranches, and acreages makes it difficult for their owners to know if intrusions are actually occurring.

The same reasoning does not apply when we consider not the "many millions of acres," but the precious fractions. Only an eccentric farmer would erect a privacy fence around a bean field, but such measures are common in urban and suburban areas. The relative smallness of urban and suburban lots makes efforts to protect privacy practical and sometimes effective.

---

[72] *Id.*, 466 U.S. at 179 n.10.

[73] *Id.*, 466 U.S. at 182.

[74] *Id.*, 466 U.S. at 182 n.12.

[75] *O'Neal v. State*, 689 So. 2d 1135, 1136 (Fla. App. 1997).

[76] See, *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995); *State v. Havlat, supra* note 50; *State v. Cemper*, 209 Neb. 376, 307 N.W.2d 820 (1981); *State v. Poulson*, 194 Neb. 601, 234 N.W.2d 214 (1975).

[77] *State v. Havlat, supra* note 50, 222 Neb. at 560, 385 N.W.2d at 440, quoting *State v. Cemper, supra* note 76.

Furthermore, the urban landowner is often only yards away from the perimeter of his land, not several sections, as is sometimes the case in rural areas.

[10] We conclude that an unenclosed area within an incorporated community is an "open field" if it is not curtilage and the person complaining of the intrusion does not, under the facts of the case, have a reasonable expectation of privacy in the area. We acknowledge that some courts have taken a less nuanced view of *Oliver*. Some courts have held, for example, that vacant residential lots,[78] the front yard of an urban duplex,[79] and the backyard of a suburban house[80] are "open fields," seemingly on the narrow ground that the area was neither curtilage nor an enclosed structure. Many of these courts have particularly relied on the following oft-cited footnote in *Oliver*: "It is clear . . . that the term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech."[81] We do not read this footnote as standing for the rule that *any* unenclosed area outside the curtilage of a home is categorically without Fourth Amendment protection. We note that the Court made this statement apparently in response to the argument that a "thickly wooded area" is not, literally, an "open field."[82] Furthermore, saying that the open fields doctrine *may* include any unoccupied land outside the curtilage of a house is not equivalent to saying that the doctrine *does* include any unoccupied land outside the curtilage. We are not eager to imply so sweeping a rule from a single noncommittal footnote.

Here, we are not concerned about curtilage because no residence was on the land. Our focus is whether Meints in fact had a reasonable expectation of privacy in his urban

[78] See, *O'Neal v. State, supra* note 75; *State v. Stavricos*, 506 S.W.2d 51 (Mo. App. 1974).

[79] See *Reeves v. Churchich*, 484 F.3d 1244 (10th Cir. 2007).

[80] See *People v. Schmidt*, 168 Ill. App. 3d 873, 522 N.E.2d 1317, 119 Ill. Dec. 458 (1988).

[81] *Oliver v. United States, supra* note 50, 466 U.S. at 180 n.11.

[82] See *id*.

lot. Meints' property is along a public street in Beatrice that comes to a "dead end" after reaching his land. Both the code enforcement officer and McCormick testified that there is no house, "closed" building, or fence on the property. A considerable number of automobiles and motorcycles sit in the dirt, obscured partially only by vegetation. The lot is strewn with smaller bits of detritus, such as sawhorses, chairs, screen doors, bicycles, woodboards, lawnmowers, fenceposts, and a basketball hoop. There are two wooden structures referred to in the record as "lean-to[s]" that are more or less enclosed on three sides. One of these structures holds about 10 motorcycles, which are visible from outside the structure. The code enforcement officer testified that while he was standing in a public street, in an alley, or on the property of one of Meints' neighbors, he could see motor vehicles without license plates or in a state of disrepair. Similarly, McCormick testified that he could see motor vehicles with no license plates or in a state of disrepair from a public street, though he could not see the VINs until he walked onto the property. At least some of the vehicles are within the line of sight of neighboring houses. The code enforcement officer estimated that he received 15 to 20 complaints from Meints' neighbors about "the junk, other expletives, and the motor vehicles." The trial court found that McCormick did not open any car doors, and McCormick testified that he did not enter any structure, or "move anything" to view the VINs while he was on the property.

We conclude that Meints did not have a reasonable expectation of privacy in his unfenced and unoccupied urban lot. The lot and its contents were visible from a public road to all who wanted to see and even to some who did not want to see (e.g., Meints' neighbors). No physical barrier obstructed entry onto the lot. Meints could not reasonably expect that tacking a "no trespassing" sign to a tree would prevent others from viewing or walking on his land. That Meints happened to be present when McCormick made one of his intrusions does not change the character of the property or ameliorate Meints' failure to make any significant efforts to ensure that it was private. McCormick did not physically manipulate items on the lot and so did not physically intrude on Meints' "effects."

Simply observing the condition of the vehicles while on the lot was not a "search"[83] and recording the VINs was not a "seizure."[84]

Because Meints did not in fact have a reasonable expectation of privacy in his urban lot, the land was an open field. Therefore, McCormick did not need a warrant because his information gathering was not a "search" under the Fourth Amendment.

## CONCLUSION

There is no "probable cause exception" to the warrant requirement. The Court of Appeals erred by assuming that a search occurred and excusing the lack of a warrant because the officer who intruded on the land had probable cause. But, under the open fields doctrine, there was no "search." So, police did not need a warrant to gather information on the property, and we affirm on that ground.

AFFIRMED.

HEAVICAN, C.J., not participating.

---

[83] See *United States v. Dunn, supra* note 70, 480 U.S. at 305.

[84] See *Arizona v. Hicks*, 480 U.S. 321, 324, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987). Accord *New York v. Class*, 475 U.S. 106, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986).

---

STATE OF NEBRASKA, APPELLEE, V.
CARLOS R. HERRERA, APPELLANT.

___ N.W.2d ___

Filed December 5, 2014.    No. S-13-659.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
2. **Expert Witnesses: Appeal and Error.** The standard for reviewing the admissibility of expert testimony is abuse of discretion.
3. **Trial: Expert Witnesses: Appeal and Error.** An appellate court reviews the record de novo to determine whether a trial court has abdicated its gatekeeping function when admitting expert testimony.